UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| SUE ANN RUSSO | : | |
| Debtor | : | Bankruptcy No. 07-17525bf |

..................................................

MEMORANDUM

..................................................

Pirola Pennuto Zei & Associates (PPZA), a creditor of the chapter 7 debtor, has filed a motion "to reconsider & vacate order of discharge and dismiss chapter 7 case." This motion is based upon the allegation that the debtor intentionally failed to disclose to the trustee and creditors her entitlement to substantial alimony and support as ordered by an Italian court in 2005 as a component of a divorce action.

The motion is opposed by the debtor.[1]  She disputes that she has any entitlement to the alimony and support awarded by the Italian court via enforcement in the Pennsylvania state court.  Moreover, she maintains that she cannot afford to return to the Italian court system.  She also contends that the Italian court award was disclosed to the chapter 7 trustee and creditors, both in her bankruptcy documents and at the meeting of creditors.  She further maintains that the relief sought by PPZA is either untimely or without statutory support.

After an evidentiary hearing, I make the following factual findings.

---

[1]The United States trustee, whose counsel attended the evidentiary hearing on this motion, opined at its conclusion that the movant has not demonstrated any fraud and that the only relief that might be appropriate is a direction to the debtor to amend her bankruptcy schedules.

I.

The debtor, Sue Ann Russo, commenced the above-captioned chapter 7 bankruptcy case on December 26, 2007.  The debtor currently resides at 115 Reveille Road, Wayne, Pennsylvania.  N.T. at 7.[2]  PPZA is a law firm located in Rome, Italy.  The debtor engaged PPZA in 1998 to represent her in marital separation and divorce proceedings that took place in Italy.  Id., at 26.

The debtor married Daniel Anthony Russo in 1978 in East Lansing, Michigan.  N.T. at 7-8, 16.  Mr. Russo is a self-employed consultant in the automotive industry.  Id., at 15.  He currently resides in Howell, Michigan.  Id., at 10.  After approximately nine years of separation, the couple were legally divorced in the spring of 2007.  Id., at 8.  The divorce proceedings occurred in Torino, Italy, where the debtor and her husband had resided at the time the divorce action commenced.  Id.

The couple has three daughters presently aged 28, 22, and 10.  Id., at 9.  The Italian court awarded custody of the couple's 10 year old child to the debtor.  Id., at 9.  In 2005, the Italian court also awarded the debtor $3,995.28 per month in child support and $2,663.90 per month for alimony.  See Ex. P-1.[3]

---

[2]References to Notes of Testimony of the trial are designated as " N.T. at (page)."

[3]Exhibit P-1 is a court order dated January 24, 2008 and signed by Judge Giannone.  The order affirms a February 18, 2005 court order, which order actually set the child support and alimony payment amounts in euros, while the January 2008 order is in dollars. Exhibit P-1 is in Italian; however an official English translation is attached to PPZA's motion to dismiss, as is a translation of the February 2005 adjudication.  Further, the parties do not dispute the amount of alimony and child support awarded by the Italian court.

The debtor described Mr. Russo as an entrepreneur whose income has always fluctuated. Id., at 16-17. At the time of the divorce proceedings in Italy, the debtor believes that Mr. Russo earned as much as $300,000 per year, and that the alimony and child support awards were predicated upon such substantial annual income. Id., at 15.[4]

Mr. Russo has not complied fully with the February 2005 order of support and alimony and, as noted, he now resides in Michigan. He commenced a competing divorce proceeding in Michigan state court, which was ultimately dismissed. Id., at 26. Apparently, PPZA, among others, represented the debtor in that litigation. Id.

The debtor has sought to collect support and alimony from Mr. Russo in the Court of Common Pleas of Chester County, Pennsylvania. To that end, she requested, pro se, that the Italian court awards of support and alimony be enforced against her former husband. Id., at 10. The debtor testified credibly in this contested matter that state court personnel informed her that the Italian support and alimony order was unenforceable because no reciprocal agreements existed between Pennsylvania and Italy. Id., at 10-11. These court personnel recommended that she seek enforcement of the support and alimony awards in Italian courts.

The debtor also testified credibly that she has no funds with which to engage counsel to litigate further in the Italian court system, nor, she believes, is she permitted to litigate pro se. Id., at 12-13. Therefore, she filed a support petition with the Chester County Department of Domestic Relations in May 2008. Id. Recently, Mr.

---

[4]The English language translation of the February 2005 Turino ruling refers to Mr. Russo earning $20,000 per month.

Russo began paying her $400 per month in child support. Id., at 11. (A hearing in front of a support master had no yet occurred as of the date of the hearing on this instant motion, and that monthly amount could be adjusted. Id., at 21.)

 Mr. Russo submitted federal tax returns to the Chester County court in connection with the Pennsylvania support litigation. Those returns stated that in 2006 and 2007 his taxable income was only $30,000 and $4,000 respectively. Id., at 11. He has also informed the Domestic Relations division of the state court that his residence has been foreclosed upon and that he is bankrupt. Id., at 15. The debtor has been advised by court personnel that, under Pennsylvania support guidelines, Mr. Russo's disclosed income would not support an award of alimony, and the probability of the debtor receiving a significant increase in child support above $400 per month is minimal. Id., at 15. The support proceeding in the Chester County court system is the only litigation initiated by the debtor to compel payment of support, either in Pennsylvania or Italy.

As mentioned above, the debtor filed her chapter 7 petition in this court on December 26, 2007. The debtor's schedules reveal that PPZA was listed as a secured creditor.[5] The debtor did not list any support income on Bankruptcy Schedule I (line 10: "[a]limony, maintenance or support payments payable to the debtor for the debtor's use or that of dependants listed above.") Nor did the debtor include any support income on

---

[5]I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries and bankruptcy schedules of this case, as well as the statement of financial affairs. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). In so doing, the bankruptcy schedules and statement are considered for the information disclosed rather than the truth of the disclosures.

Bankruptcty Form B22A line 8, which seeks financial information from chapter 7

debtors, including income from support and alimony payments.

The debtor, however, did include information about support income

elsewhere in her bankruptcy schedules and her Statement of Financial Affairs filed with

this court.  In response to query #17 on Schedule B, which requires the debtor to provide

information about "[a]limony, maintenance, support, and property settlements to which

the debtor is or may be entitled," the debtor answered: "Daniel Russo (estranged husband)

owes 3000.00/month child support and 2000.00/month alimony."  Amended Schedule B

filed March 25, 2008.  Furthermore, the Statement of Financial Affairs, question 2,

requires the debtor to "[s]tate the amount of income received . . . other than from

employment, trade, profession, or operation of the debtor's business during the two years

immediately preceding the commencement of this case."  The debtor responded that she

had received alimony and child support payments from Mr. Russo as follows:

| AMOUNT | SOURCE |
|--------|--------|
| $24,000 | 2005 Alimony Payments |
| $10,000 | 2006 Alimony Payments |
| $36,000 | 2005 Child Support Payments |
| $30,000 | 2006 Child Support Payments |
| $17,850 | 2007 Child Support Payments |

The debtor listed gross monthly income on Schedule I and Form B22A as

$2,812.90.  She computed her annualized income on Form B22A to be $33,754.68.  The

median income for a family of four in Pennsylvania is $74,072.00; therefore, the debtor

reported on her Form B22A that no presumption of abuse arose upon the filing of her

chapter 7 bankruptcy petition.[6]

A notice was sent to all creditors informing them of a meeting of creditors,

pursuant to 11 U.S.C. § 341, to be held on January 23, 2008. That notice was amended

on January 10, 2008 to reschedule the meeting of creditors to February 1, 2008. See

docket entries ##21, 30. There is no dispute that PPZA received the notice of the first

date set for the meeting of creditors. See Certificates of Service at docket entries ##22

and 31.[7] The notice includes a directive to "creditor[s] with a foreign address" to read the

information regarding not filing a proof of claim because there did not appear to be any

assets for distribution. Creditors would be advised later if assets were available.

Indeed, at the hearing on this contested matter, PPZA conceded that it was

aware of the debtor's bankruptcy filing and the date for the meeting of creditors, but it

chose not to attend. N.T. at 32. Furthermore, PPZA was identified in the debtor's

Statement of Financial Affairs, question #4, as holding a judgment against her in

Pennsylvania state court. By motion filed on January 4, 2008, the debtor sought to avoid

any judicial lien held by this creditor pursuant to 11 U.S.C. § 522(f). Docket entry #23.

PPZA filed a response to this motion on January 21, 2008. Docket entry #32. Thus, the

evidence is clear that PPZA was fully aware of the debtor's chapter 7 bankruptcy filing

prior to the first date set for the meeting of creditors. With that knowledge, PPZA was

---

[6]Debtor reported on Form B22A that there are four persons in her household.
Besides the debtor and her minor daughter, it is not clear who the other persons are; however, it
is possible that the debtor's two adult daughters are also living with her.

[7]The trustee did not conclude the creditors' meeting until April 2008, in part to
obtain additional information from the debtor. See docket entry of 3/10/08.

free to review her bankruptcy schedules, her Form B22A, and her Statement of Financial Affairs.[8]

On April 30, 2008, the chapter 7 trustee filed his final report noting that there were no non-exempt assets for him to administer.  On June 10, 2008, this court issued a chapter 7 discharge.  See docket entry #47.  The instant motion by PPZA to reconsider and vacate the discharge order and dismiss this case was filed on June 19, 2008.

Finally, counsel for the U.S. Trustee did not elicit evidence at the hearing.  However, he represented to the court that questions involving the debtor's Italian divorce and support and alimony awards were raised at the meeting of creditors, and that the U.S. Trustee was satisfied that the debtor was forthright in her responses to all queries posed to her pertaining to those matters.  N.T. at 42-44.  Implicit in this representation is that the chapter 7 trustee was aware of the Italian support order no later than the meeting of creditors.  As noted above, the trustee has reported that he has concluded that there are no non-exempt assets to administer in this bankruptcy case.

II.

In its posthearing memorandum, PPZA argues that had the debtor included the amounts awarded by the Italian divorce court as income on her bankruptcy schedules and Form B22A, this case would not have been permitted to proceed under chapter 7 by

---

[8]Indeed, these documents are available for review online via the court's PACER system or at the courthouse.

virtue of section 707(a) and/or (b).  Thus, the movant contends that the debtor's omission

of this income constituted bad faith.  Furthermore, PPZA maintains that the debtor's

failure to disclose support and alimony income serves as a basis to revoke her chapter 7

discharge under section 727(d).[9]

     I shall consider these contentions in the order just listed.

A.

11 U.S.C. § 707 provides for the dismissal of a chapter 7 case:

(a) The court may dismiss a case under this chapter only after
notice and a hearing and only for cause, including–

(1) unreasonable delay by the debtor that is prejudicial
to creditors;

(2) nonpayment of any fees or charges required under chapter
123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within
fifteen days or such additional time as the court may allow
after the filing of the petition commencing such case, the
information required by paragraph (1) of section 521, but only
on a motion by the United States trustee.

---

[9]Under the Federal Rules of Bankruptcy Procedure, actions to revoke a debtor's discharge must be brought as adversary proceedings, which are commenced via complaint.  Fed. R. Bankr. P. 7001(4); In re Lokay, 269 B.R. 132, 138 (Bankr. W.D. Pa. 2001).  To the extent that PPZA now seeks revocation of the debtor's chapter 7 discharge, it has done so via motion. Because the debtor did not object on procedural grounds, and has suffered no prejudice by the procedural defect, I will consider this defect waived.  See, e.g., In re Cannonsburg Environmental Associates, Ltd., 72 F.3d 1260, 1265 (6th Cir. 1996); Matter of Village Mobile Homes, Inc., 947 F.2d 1282, 1283 (5th Cir. 1991) ("Compliance with the requisites of an adversary proceeding may be excused by waiver of the parties."); In re Orfa Corp., 170 B.R. 257, 275 (E.D. Pa. 1994); In re Vandy, Inc., 189 B.R. 342, 346 (Bankr. E.D. Pa. 1995) (where no party raised the issue, and where no prejudice would result, the bankruptcy court can overlook the error in filing a motion instead of a complaint).

(b)(1) After notice and a hearing, the court, on its own motion
or on a motion by the United States trustee, trustee (or
bankruptcy administrator, if any), or any party in interest, may
dismiss a case filed by an individual debtor under this chapter
whose debts are primarily consumer debts, or, with the
debtor's consent, convert such a case to a case under chapter
11 or 13 of this title, if it finds that the granting of relief
would be an abuse of the provisions of this chapter.  In
making a determination whether to dismiss a case under this
section, the court may not take into consideration whether a
debtor has made, or continues to make, charitable
contributions (that meet the definition of "charitable
contribution" under section 548(d)(3)) to any qualified
religious or charitable entity or organization (as that term is
defined in section 548(d)(4)).

To the extent that PPZA now seeks dismissal of this chapter 7 case pursuant

to section 707(b), its request is untimely.  Federal Rule of Bankruptcy Procedure

1017(e)(1) [Interim][10] requires that a motion to dismiss under section 707(b) be filed

"within 60 days after the first date set for the meeting of creditors under § 341(a), unless,

on request filed before the time has expired, the court for cause extends the time for filing

the motion to dismiss."  The first date set for the meeting of creditors was, at the latest,

February 1, 2008 in the amended notice, even though the meeting did not actually occur

or conclude on that date.  See, e.g., In re Moss, 258 B.R. 391, 396 (Bankr. W.D. Mo.

2001) (interpreting meaning of same language used in Fed. R. Bankr. P. 4004[11]) ("It is

---

[10]In light of the passage of the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, and until official procedural rules are adopted under the Rules Enabling
Act, the Judicial Conference has recommended the adoption of "Interim" procedural rules.  See
In re Kibbe, 361 B.R. 302 (B.A.P. 1st Cir. 2007).  This district accepted that recommendation by
order dated October 5, 2005.  See Standing Order, Misc. No. 05-3008.

[11]Cases interpreting the deadline for motions objecting to discharge pursuant to
Fed. R. Bankr. P. 4004 are relevant, as the Advisory Committee Note to Rule 1017(e) explains:

Subdivision (e) is amended to conform to the 1986 amendment to

(continued...)

universally accepted that the 60-day time period runs from the first date set for the

meeting of creditors regardless of whether the meeting actually occurs on that date.").

Thus, any motion under section 707(b) was due by April 1, 2008.  PPZA neither filed its

motion by that date nor sought any extension of time to do so.  Accordingly, it is not now

entitled to any relief under section 707(b).  See In re Weeks, 306 B.R. 587, 589 (Bankr.

E.D. Mich. 2004); In re Harris, 1999 WL 33490227 (Bankr. D. Idaho 1999); In re

Motaharnia, 215 B.R. 63, 69 (Bankr. C.D. Cal. 1997).

---

(...continued)

§ 707(b) of the Code which permits the United States trustee to
make a motion to dismiss a case for substantial abuse.  The time
limit for such a motion is added by this subdivision.  In general, the
facts that are the basis for a motion to dismiss under § 707(b) exist
at the time the case is commenced and usually can be discovered
early in the case by reviewing the debtor's schedules and
examining the debtor at the meeting of creditors.  Since dismissal
for substantial abuse has the effect of denying the debtor a
discharge in the chapter 7 case based on matters which may be
discovered early, a motion to dismiss under § 707(b) is analogous
to an objection to discharge pursuant to Rule 4004 and, therefore,
should be required to be made within a specified time period.  If
matters relating to substantial abuse are not discovered within the
time period specified in subdivision (e) because of the debtor's
false testimony, refusal to obey a court order, fraudulent schedules
or other fraud, and the debtor receives a discharge, the debtor's
conduct may constitute the basis for revocation of the discharge
under § 727(d) and (e) of the Code.

Indeed, to the extent that PPZA raises issues under section 727(a), which govern
objections to discharge, such issues are also untimely.  An objection to discharge must be
requested by a complaint filed within 60 days from the first date set for the meeting of creditors.
Rule 4004(a) [Interim].

B.


A request to dismiss a chapter 7 case under section 707(a) need not be made within 60 days of the first date set for the meeting of creditors.  Nonetheless, such a dismissal motion serves little, if any, valid purpose if filed after the entry of the chapter 7 discharge, unless the discharge can otherwise be revoked.

Section 349 of the Code governs the effect of dismissal of a bankruptcy case.  Subsection (b) states:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title–
>
> > (1) reinstates–
> >
> > > (A) any proceeding or custodianship superseded under section 543 of this title;
> > >
> > > (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
> > >
> > > (C) any lien voided under section 506(d) of this title;
> >
> > (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
> >
> > (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

Section 349(b), while detailing numerous effects when a bankruptcy case is dismissed, does not state that dismissal results in vacating a bankruptcy discharge.  As a

11

result, numerous courts have held that dismissal of a case, by itself, does not vacate a

previously entered discharge order.  See, e.g., In re Pavelich, 229 B.R. 777, 780 (B.A.P.

9th Cir. 1999) ("[T]he omission of an order from the list in § 349(b) ordinarily means that

dismissal does not affect the omitted order. . . .  We conclude that the dismissal order,

without more, did not automatically revoke the debtor's discharges.");   In re Space Bldg.

Corp., 206 B.R. 269, 272 (D. Mass. 1996); In re Pharao, 2000 WL 1449846, at *1 (Bankr.

E.D. Va. 2000) ("[T]he case law seems clear that dismissal of a bankruptcy case does not

by itself vacate a discharge that has already been entered in that case."); In re Rodriguez,

255 B.R. 118, 120-21 (Bankr. S.D.N.Y. 2000); In re Puckett, 193 B.R. 842, 845 (Bankr.

N.D. Ill. 1996); see In re Lopez Development, Inc., 154 B.R. 607, 609 n.3 (Bankr. S.D.

Fla. 1993) (dismissal had no effect on confirmation order); 6 Norton Bankr. L. & Prac.

§114:13 (3d ed. 2008).[12]

Therefore, as the debtor contends (and PPZA agrees, Memorandum at 4)

the primary issue posed by PPZA involves its request for revocation of the debtor's June

10th discharge order.  And, for the reasons that follow, revocation of the debtor's

discharge order is not justified in these circumstances.  Thus, dismissal under section

707(a) is unwarranted.[13]

---

[12]Thus, after discharge, although grounds for dismissing a chapter 7 case could exist, dismissal may well be inappropriate.  See In re Rodriguez, 255 B.R. at 120 ("[D]ismissal [after discharge] confers all of the benefits but none of the burdens of bankruptcy on the debtor.").

[13]Alternatively, based upon the evidence presented, I conclude that the debtor did not act in bad faith and thus cause to dismiss under section 707(a) was not demonstrated.  See generally Perlin v. Hitachi Capital America Corp., 497 F.3d 364 (3d Cir. 2007).

12

C.


Section 727(d) permits revocation of a bankruptcy discharge in limited

circumstances:

> (d) On request of the trustee, a creditor, or the United States
> trustee, and after notice and a hearing, the court shall revoke a
> discharge granted under subsection (a) of this section if–
>
>> (1) such discharge was obtained through the
>> fraud of the debtor, and the requesting party did
>> not know of such fraud until after the granting
>> of such discharge;
>>
>> (2) the debtor acquired property that is property
>> of the estate, or became entitled to acquire
>> property that would be property of the estate,
>> and knowingly and fraudulently failed to report
>> the acquisition of or entitlement to such
>> property, or to deliver or surrender such
>> property to the trustee;
>>
>> (3) the debtor committed an act specified in
>> subsection (a)(6) of this section; or
>>
>> (4) the debtor has failed to explain
>> satisfactorily–
>>
>>> (A) a material misstatement in an
>>> audit referred to in section 586(f)
>>> of title 28; or
>>>
>>> (B) a failure to make available for
>>> inspection all necessary accounts,
>>> papers, documents, financial
>>> records, files, and all other papers,
>>> things, or property belonging to
>>> the debtor that are requested for
>>> an audit referred to in section
>>> 586(f) of title 28.

13

PPZA raises no issues under section 727(d)(3) or (d)(4), leaving only subsections (d)(1) and (d)(2) as potential grounds for its desired revocation.[14]  The burden of persuasion falls upon the creditor to demonstrate that the elements of these two subsections are established.  See, e.g., Matter of McElmurry, 23 B.R. 533, 535 (W.D. Mo. 1982); In re Kaliana, 202 B.R. 600, 603-04 (Bankr. N.D. Ill. 1996); In re Argiannis, 183 B.R. 307, 310 (Bankr. M.D. Fla. 1995).  Here, PPZA's contentions under section 727(d)(1) and (d)(2) founder for two reasons.

First, to prevail under section 727(d)(1), the creditor must demonstrate that any fraud committed by the debtor—which fraud, if known would have precluded a bankruptcy discharge—was unknown to the creditor until after the chapter 7 discharge was granted.  See, e.g., In re Matos, 267 Fed. Appx. 884, 887 (11th Cir. 2008) (unpublished).  Section 727(d)(1) places a "burden . . . on the creditor to investigate diligently any possibly fraudulent conduct before discharge" when "the creditor knows facts such that he or she is put on notice of a possible fraud."  Mid-Tech Consulting, Inc. v. Swendra, 938 F.2d 885, 888 (8th Cir. 1991).

Here, PPZA clearly knew of the Italian order awarding the debtor substantial monthly support and alimony: the law firm had represented the debtor in that foreign proceeding.  It also knew of the debtor's bankruptcy filing long prior to the entry of the chapter 7 discharge through notice of the meeting of creditors; and it received and responded to the debtor's motion to avoid its judgment lien many months before entry of

---

[14]Section 727(e) affords a creditor one year from the date of discharge to request revocation of discharge under subsection (d)(1) and no less than one year under subsection (d)(2). Therefore, albeit procedurally incorrect, PPZA's present motion is timely.

14

the chapter 7 discharge.  Furthermore, according to the debtor's schedules, PPZA held a

substantial claim against the debtor, thus warranting attention to this case.

In June 2008, nine days after the discharge was entered, PPZA filed the

instant motion contending that the debtor made fraudulent omissions on her bankruptcy

schedules.  If I assume arguendo that such omissions were fraudulent, clearly at some

undisclosed point the creditor reviewed the debtor's bankruptcy schedules.  If it did so

prior to the entry of discharge, such as when it received notice of the bankruptcy filing or

the debtor's motion to avoid its judicial lien, then it clearly knew of the fraud in time to

timely object to discharge.  The omissions of which it now complains would be apparent

to it.  See In re Fehrs, 391 B.R. 53, 82 (Bankr. D. Idaho 2008).  And if it only reviewed

those schedules after discharge, then it did not act diligently given the information in its

possession regarding the possibility of a fraudulent omission (viz., that the debtor had

filed a chapter 7 petition, and that she had been awarded more than $6,600 per month in

child support and alimony by an Italian court):

> When Humphreys received notice of Stedham's bankruptcy
> case, he or his attorneys should have reviewed the petition to
> make sure the antiques collection was listed as an asset
> particularly in light of the fact that Stedham disclosed the
> state court lawsuit on his Statement of Financial Affairs.

In re Stedham, 327 B.R. 889, 899 (Bankr. W.D. Tenn. 2005); see also In re Stein, 102

B.R. 363, 368 (Bankr. S.D.N.Y. 1989) (creditor failed to act diligently prior to entry of

the bankruptcy discharge); cf. In re GSYS Enterprises, Inc., 343 B.R. 568, 571 (Bankr.

N.D. Tex. 2006) ("equity favors the diligent").

The creditor has the burden of proof on the issue of its lack of knowledge,

and it has not met that burden in this instance.  There is no evidence when PPZA first

15

reviewed the debtor's bankruptcy schedules and so was on notice of the alleged

fraudulent omissions.  Thus, this element of section 727(d)(1) was not met.  See In re

DaMaia, 217 F.3d 838, 200 WL 977395, at *1 (4th Cir. July 17, 2000) (unpublished); In

re Fehrs, 391 B.R. at 82.

      Second, its argument that the debtor committed fraud by not including the

Italian support and alimony awards as components of her income on her bankruptcy

schedules was unproven.  Fraud, inter alia, requires an intent to deceive and no such

intent was demonstrated in this contested matter.

      The debtor's schedules and Statement of Financial Affairs reveal that she

was the recipient of a prepetition support and alimony award and that she had received

some support during the two years prior to her bankruptcy filing.  The Italian courts had

awarded her more than $6,600 per month in child support and alimony.  Her Statement of

Financial Affairs disclosed receiving $60,000 in combined payments in 2005, $40,000 in

combined payments in 2006 and $17,800 in support payments in 2007.  Her Bankruptcy

Schedule B also identified her support and alimony awards.

      Moreover, the trustee questioned her about these awards during the meeting

of creditors and thereafter undertook no action on behalf of the bankruptcy estate to

recover any unpaid support or alimony due to the debtor.  Trustee inaction may have

occurred because enforcement of such a foreign order of support may be limited to

proceedings in the Italian and not Pennsylvania court system.

      A support order issued by a foreign court may be enforced in Pennsylvania

courts under principles of comity, but a Pennsylvania state court is not obligated to adopt

the order as its own.  See Pfeifer v. Cutshall, 851 A.2d 983, 986 (Pa. Super. 2004);

16

Hilkmann v. Hilkmann, 816 A.2d 242, 245-46 (Pa. Super. 2003); Drakulich v. Drakulich,

333 Pa. Super. 273, 276 (1984).  As observed by the Third Circuit Court of Appeals in a

non-support context:

> Pennsylvania distinguishes between judgments obtained in the
> courts of her sister states, which are entitled to full faith and
> credit, and those of foreign courts, which are subject to
> principles of comity.  In re Christoff's Estate, 411 Pa. 419,
> 192 A.2d 737, cert. denied, 375 U.S. 965, 84 S. Ct. 483, 11 L.
> Ed.2d 414 (1964).
>
> Comity is a recognition which one nation extends within its
> own territory to the legislative, executive, or judicial acts of
> another.  It is not a rule of law, but one of practice,
> convenience, and expediency.  Although more than mere
> courtesy and accommodation, comity does not achieve the
> force of an imperative or obligation.  Rather, it is a nation's
> expression of understanding which demonstrates due regard
> both to international duty and convenience and to the rights of
> persons protected by its own laws.  Comity should be
> withheld only when its acceptance would be contrary or
> prejudicial to the interest of the nation called upon to give it
> effect.

Somportex Limited v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir.

1971).

Pennsylvania courts may decline to extend comity to orders issued by

foreign courts that offend state court concepts of justice or public policy.  See Pfeifer v.

Cutshall, 851 A.2d at 986.  Indeed, when a Pennsylvania court is deciding whether to

enforce a foreign order of support, the court may apply legal principles found in

Pennsylvania state law, including its own support guidelines, and conduct an independent

determination of the reasonableness of the support payments to be made.  See id., 851

A.2d at 987; see also Drakulich v. Drakulich, 482 A.2d at 566.

17

The evidence offered by PPZA does not demonstrate that Pennsylvania courts either intend to or are required to enforce the Italian court's support and alimony award.  The only evidence presented is that Mr. Russo has been tendering decreasing support and alimony sums between 2005 and 2007, has been ordered by the state court post-bankruptcy to pay only $400 per month to the debtor, and that the debtor may have no practical means to obtain additional sums from her ex-spouse or enforcement of her 2005 foreign awards.  To prevail under section 727(d), PPZA needed to demonstrate that the debtor failed to disclose her prepetition support and alimony awards, and either was actually receiving the alimony or support income and not disclosing this to the chapter 7 trustee, see generally In re Yonikus, 974 F.2d 901, 905-06 (7th Cir. 1992), or had an ability to collect these awards which she intentionally hid from the trustee.  See generally In re Butler, 2004 WL 3127441, at *2-*3 (Bankr. C.D. Ill. 2004).

Here, the debtor did reveal her receipt of prepetition support and alimony, and did respond to the trustee's inquiries about it.  Moreover, there was no evidence presented that the debtor was actually receiving support and/or alimony payments in the amount awarded by the Italian court when she filed this chapter 7 petition in December 2007.  Nor did PPZA demonstrate that the debtor has hidden her ability to collect on the Italian support and alimony order.

Thus, there was no evidence presented that demonstrated that the debtor committed fraud which, if known, would have precluded the entry of discharge as required by section 727(d)(1), see In re Matos, 267 Fed. Appx. at 888, nor that she fraudulently failed to report the acquisition of or entitlement to property as required by section 727(d)(2).  See In re Klages, 381 B.R. 550 (B.A.P. 8th Cir. 2008) (discharge

revoked after debtor failed to report receipt of tax refund); <u>In re Argiannis</u>, 183 B.R. 307

(discharge revoked for debtors' failure to report postpetition rents).

   Accordingly, since revocation under section 727(d) is unwarranted,

dismissal under section 707(a) is inappropriate.

   An appropriate order shall be entered.

            _____
             BRUCE FOX
          United States Bankruptcy Judge

Dated: October 17, 2008.